UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHALENE M. DILLIN,

**REPORT AND
RECOMMENDATION**

                   Plaintiff,

09-CV-512
(LEK/VEB)

        V.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
_____

## I. INTRODUCTION

In January of 2006, Plaintiff Shalene M. Dillin filed an application for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since October 1, 2004. The Commissioner of Social Security partially denied Plaintiff's application.

Plaintiff, through her attorneys, Conboy, McKay, Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq. of counsel, commenced this action on April 30, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for benefits on January 31, 2006, alleging disability beginning on July 1, 1999.[1] (T at 523).[2] The application was denied initially. (T at 60). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 56, 57). A hearing was held on July 30, 2008, in Syracuse, New York before ALJ Elizabeth Koennecke. (T at 557). Plaintiff appeared along with her attorney, Lawrence Hasseler, Esq. (T at 557).

On December 1, 2008, the ALJ issued a decision denying Plaintiff's application. (T at 13-22). Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on April 23, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

Plaintiff, through counsel, commenced this action on April 30, 2009. (Docket No. 1). The Commissioner interposed an Answer on August 20, 2009. (Docket No. 9). Plaintiff filed a supporting Brief on October 12, 2009. (Docket No. 10). The Commissioner filed a Brief in opposition on December 2, 2009. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[1]The application lists an alleged onset date of July 1, 1999. (T at 523). However, the ALJ noted that the alleged onset date was October 1, 2004. (T at 13). Plaintiff does not dispute the ALJ's date and, indeed, adopts it as her own. (Docket No. 10, at p. 1). Accordingly, this Court will proceed with an alleged onset date of October 1, 2004.

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded to the Commissioner for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements under the Act through December 31, 2005. (T at 15).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2004, the alleged onset date. (T at 15-16).  The ALJ determined that Plaintiff had the following impairment considered "severe" under the Act: lupus crythematosus. (T at 16).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 18).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of light work. (T at 18).

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The ALJ determined that Plaintiff has no past relevant work. (T at 21).  She further concluded that, considering Plaintiff's age (26 years old as of the alleged onset date), education (high school), and RFC (light work), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21).

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined under the Social Security Act, since the alleged onset date. (T at 22).  As noted above, the ALJ's decision became the Commissioner's final decision on April 23, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 6-9).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers six (6) principal arguments in support of her position.  First, Plaintiff contends that the ALJ erred at step 2 of the sequential evaluation because she did not find that Plaintiff's asthma, carpal tunnel syndrome, and shoulder impairments were severe impairments.  Second, Plaintiff argues that the ALJ improperly failed to give controlling weight to the assessment of her treating physician.  Third, she asserts that the ALJ did not properly evaluate her credibility.  Fourth, Plaintiff argues that the ALJ's RFC determination was contrary to the applicable standard and is not supported by substantial evidence.  Fifth, she contends that the ALJ erred by finding that Plaintiff had no past relevant work.  Sixth, Plaintiff asserts that the Commissioner's conclusion that there is significant work in the national economy that Plaintiff can perform is not supported by substantial evidence.  Each argument will be addressed in turn.

### a.     Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

The ALJ found that Plaintiff's lupus crythematosus was a severe impairment. (T at 16). However, the ALJ concluded that while Plaintiff suffered from asthma, bilateral carpal

tunnel syndrome radiating to the shoulders, and various other impairments, the record failed to show that these impairments had more than minimal limitation's on her ability to perform basic work-related activities for a continuous period of at least 12 months. (T at 16).

Plaintiff challenges the ALJ's assessment and argues that her asthma, carpal tunnel syndrome, and shoulder impairments are severe conditions.

### i.    Asthma

With regard to Plaintiff's asthma, the ALJ recognized that "[v]arious examining sources have offered environmental limitations due to asthma," however, "this was during a period [when Plaintiff] . . . was smoking." (T at 17).  The ALJ thus opined that "[a]dvising a smoker to avoid other respiratory irritants [is] ridiculous in light of the fact that the smoker is voluntarily inhaling respiratory irritants daily." (T at 17).  Further, the ALJ noted that even when smoking, Plaintiff used her inhaler as needed and "no treating source . . . limited her activities because of [asthma]." (T at 17).  Although Plaintiff noted shortness of breath that worsened during pregnancy, "those problems resolved." (T at 17).  Lastly, the ALJ noted that Plaintiff continued smoking into 2008 and, as such, there was "no showing that the condition persists at the same level absent the smoking for the requisite 12 months." (T at 17).

This Court finds that the ALJ's assessment is not supported by substantial evidence. Dr. James Naughten performed a consultative exam in June of 2006 and opined that Plaintiff "should avoid all known smoke, dust, and respiratory irritants due to her asthma." (T at 268).  Notations in Plaintiff's medical records indicated that she frequently suffered asthmatic symptoms, which she treated with a prescription inhaler. (T at 181, 239-41, 373,

383, 386).  Dr. Sheikh, the person identified as Plaintiff's treating physician,[5] completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, in which he indicated that Plaintiff was limited with regard to her ability to be exposed to dust, fumes, odors, chemicals, and gases. (T at 504).

The ALJ discounted the environmental limitations assessed by the various sources on the grounds that the assessments were made during a period when Plaintiff was smoking. (T at 17).  There is nothing inherently objectionable about the ALJ's suggestion that Plaintiff's asthma would not be a disabling impairment to the extent it can be remedied by smoking cessation.  See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir.1983)(noting that "a remedial impairment is not disabling" and finding no disability where claimant's "only remaining difficulty of consequence is a breathing problem that is being aggravated and probably caused by [claimant's] smoking"); see also Pickering v. Chater, 951 F. Supp. 418, 428 (S.D.N.Y.1996).

However, the ALJ's assessment was not supported by any medical opinion regarding what effect, if any, smoking cessation would have on the environmental limitations caused by Plaintiff's asthma.  It was thus improper for the ALJ to engage in an independent evaluation or analysis of the medical findings.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . . [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion

_____

[5]See discussion below in Section III.B.2.b.

to or] testified before him.'") (quoting <u>McBrayer v. Secretary of Health and Human Servs.</u>, 712 F.2d 795, 799 (2d Cir.1983); <u>see also</u> <u>Filocomo v. Chater</u>, 944 F.Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

Rather, under the circumstances, prior to concluding that Plaintiff's asthma was not a severe impairment, the ALJ was obligated to re-contact Dr. Sheikh and seek clarification of his opinions concerning the severity of Plaintiff's environmental limitations and the extent to which they would be improved if she quit smoking. <u>See</u> <u>West v. Barnhart</u>, No. 06-CV-275, 2008 WL 2561991, at *3 (W.D.N.Y. June 25, 2008)("The medical records submitted by plaintiff's treating pulmonary specialist, Dr. Fiorica, contain several inconsistencies. I find that the ALJ committed error by failing to contact Dr. Fiorica for clarification of his opinions concerning the severity of the plaintiff's asthma and the extent to which it would be improved if plaintiff quit smoking.").

### ii.    Carpal Tunnel

The ALJ noted that diagnostic testing performed in January 2001 indicated that Plaintiff suffered from left median neuropathy at the wrist (carpal tunnel syndrome), which was described as "mild." (T at 178). However, the ALJ further explained that the medical evidence did not include documentation or testing (such as "positive Tinel's signs") indicating that the carpal tunnel syndrome remained present in either of Plaintiff's hands as of the alleged onset of disability. (T at 18). Further, the ALJ opined that, even if carpal tunnel was present, there was no indication that "its symptoms more than minimally affected" Plaintiff's ability to engage in work activity. (T at 18).

Plaintiff contends that the ALJ's findings are contradicted by the record, which

indicates a positive Tinel's test[6] performed in 1999 at the elbow and wrist (T at 182).  Dr. Naughten, the consultative examiner, also noted "[p]ositive Tinel" upon his examination. (T at 267).  Dr. Naughten also opined that Plaintiff would have "[m]oderate limitation . . . handling objections." (T at 268).  Dr. Sheikh indicated that Plaintiff was occasionally limited with regard to handling, fingering, and feeling due to numbness of both hands (with the left more numb than the right). (T at 503).

At step two of the sequential evaluation, the issue is whether the effect of the impairment is so *de minimis* as to have nothing more than a minimal impact on the claimant's ability to perform basic work activities. See Dixon, 54 F.3d at 1030.  If the effect is more than *de minimis*, the impairment is severe. See SSR 85-28 ("An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered ( i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities.")).

In this case, any suggestion that Plaintiff's carpal tunnel syndrome is *de minimis* is contradicted by the findings of Dr. Naughten and Dr. Sheikh.  In contrast, the ALJ's non-severity finding is based upon a misreading of the evidence concerning the Tinel's testing and not supported by substantial evidence.

---

[6]"Tinel's sign tests are used to diagnose carpal tunnel syndrome."  Astolos v. Astrue, No. 06-CV-678, 2009 WL 3333234, at *2 (W.D.N.Y. Oct. 14, 2009).

### iii.    Shoulder Impairment

The ALJ noted that "a left should impairment is present" but found "no evidence" that the impairment "causes more than mild limitations for the requisite 12 months." (T at 18). This assessment is likewise not adequately supported by the record.  Contrary to the ALJ's suggestion regarding a lack of evidence of shoulder-related limitations, Dr. Naughten noted "shoulder pain in the deltoid region, AC joint area" and opined that Plaintiff had "[m]ild to moderate limitations" with respect to "pushing, pulling, and reaching." (T at 267-8). Moderate limitations were assessed as to lifting and carrying. (T at 268).  Dr. Sheik noted similar limitations (T at 501-503) and indicated that shoulder pain was one of the causes of those limitations. (T at 502).

For the foregoing reasons, this Court finds that a remand is necessary.  The ALJ must revisit the question of whether the above-referenced impairments are "severe" as that term is used at step two of the sequential evaluation process.

### b.    Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[7]

Even if a treating physician's opinion is deemed not to be deserving of controlling

---

[7]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, an ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Amjad Sheikh provided a medical source statement in which he opined that Plaintiff could "very" occasionally lift 10 pounds; stand/walk for less than 2 hours in an 8 hour workday; could never climb, balance, kneel, crouch, crawl, or stoop; was limited with regard to reaching, handling, fingering, and feeling; and was limited as to temperature extremes, dust, vibration, humidity/wetness, and fumes/odors/gases. (T at 501-504).

Plaintiff identifies Dr. Sheikh as her treating physician and argues that the ALJ improperly failed to give Dr. Sheikh's assessment controlling weight.  The ALJ gave Dr. Sheikh's report "[l]ittle or no weight" because it was not supported by any treatment notes and there was no indication in the record that Dr. Sheikh had treated Plaintiff prior to making his assessment.  (T at 19).  Because this Court recommends remand as to the issues discussed above and given the importance of a treating physician's assessment, the ALJ, on remand, should re-contact Dr. Sheikh and obtain clarification concerning the nature of his treating relationship and frequency of examination.  After further development of the

record in this regard, the ALJ should then revisit the question of what weight, if any, to assign to Dr. Sheikh's assessment.

### c.    Credibility Assessment

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and

limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ discounted Plaintiff's complaints of fatigue and pain, noting that Plaintiff did not begin complaining of fatigue until the end of 2005 and engaged in activities of daily living inconsistent with her alleged symptoms. (T at 20).  The ALJ should revisit this assessment on remand after reconsideration of the severity issue at step two of the sequential evaluation process and after further development of the record.  Moreover, given the diagnosis of lupus, the ALJ should consider whether the delay in Plaintiff's complaints

15

regarding fatigue was caused by progression of the disease.  Likewise, when considering the extent of Plaintiff's activities in terms of caring for her children, the ALJ should give careful consideration to the significant help that Plaintiff receives from her family and friends in performing those activities, the vital necessity of caring for children despite disabling pain, the effect of her medications on her ability to function, and/or the fluctuating nature of the disease, if any. (T at 577-78). See Polidoro v. Apfel, No. 98 Civ.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y.1999)(noting that "[a] claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the SSA") (citing Williams v. Bowen, 859 F.2d 255, 260 (2d Cir.1988)). "A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job." Id.

### d.    RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence

in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ determined that Plaintiff retained the RFC to perform the full range of light work. (T at 18). "Light work" involves "lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967 (emphasis added).  "'Frequent' means occurring from one-third to two-thirds of the time." SSR 83-10.

The ALJ's RFC determination was necessarily affected by and indeed, based in part upon, his determinations at step two with regard to whether Plaintiff's impairments were severe, his assessment of Dr. Sheik's opinion, and his evaluation of Plaintiff's credibility. For the reasons stated above, this Court finds that remand is appropriate as to all of these issues, which means that reconsideration of the RFC will be necessary on remand.

### e.    Past Relevant Work

Plaintiff notes an apparent contradiction in the ALJ's decision.  The decision contains numerous references to Plaintiff's past work history, including jobs selling jewelry, assistant to an oral surgeon, photographer at portrait studio.  (T at 20).  In addition, the ALJ found that Plaintiff had sufficient earnings to meet the insured status requirements under the Act through December 31, 2005. (T at 15).

However, the ALJ stated that she was giving Plaintiff "the benefit of the doubt" and finding that none of the past work could be considered "past relevant work."  Plaintiff challenges this finding, although (as noted by the Commissioner) the ALJ's finding, even if erroneous, was actually favorable to the Plaintiff in that she was not required, at step four of the sequential evaluation, to show that she was unable to perform her past relevant

17

work.  This Court finds no prejudicial error as to this aspect of the ALJ's decision. However, on remand, the ALJ should consider and discuss whether Plaintiff's complaints of disabling pain and fatigue are entitled to greater weight based upon her numerous (albeit unsuccessful) attempts to return to work. See Meyers v. Astrue 681 F.Supp.2d 388, 404 (W.D.N.Y. 2010)("Plaintiff's undisputed attempt to engage in retraining and return to work thereafter reinforces her credibility."); Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir.1998) ("ALJs are specifically instructed that credibility determinations should take account of "prior work record.").

> ### f.    Reliance upon the Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and

work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

In this case, the ALJ used the Grids in reaching her disability determination. (T at 21). However, the ALJ's consultation of the Grids was based upon her RFC assessment with regard to Plaintiff's physical limitations, namely that she was capable of performing the full range of light work. (T at 21). That determination was impacted by the ALJ's errors as discussed above. As such, the step 5 analysis should be revisited on remand following reconsideration of that portion of the ALJ's decision.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

19

(E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 17, 2010

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 17, 2010

Victor E. Bianchini
United States Magistrate Judge